UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK ALLISON,

        Plaintiff,                      Case Number:08-15093

v.                                           THOMAS L. LUDINGTON
                                            UNITED STATES DISTRICT COURT

MICHAEL MARTIN, JAMES ARMSTRONG,
ISA A. BASIR, JAMES BURRUS, SANDRA     VIRGINIA M. MORGAN
MONAHAN, SUZANNE WAYDA-SLOMSKI,  UNITED STATES MAGISTRATE JUDGE
JANE DOE and JOHN DOE,

        Defendants.

_____ /

### REPORT AND RECOMMENDATION
### GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt No. 16)

This is a *pro se* 42 U.S.C. § 1983 action in which Plaintiff Derrick Allison, an inmate in the custody of the Michigan Department of Corrections, alleges that Defendants violated his rights under the Free Exercise Clause of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act ("RFRA") by denying him participation in the Kosher Meals Program and refusing to give him religious materials. This matter is before the court on Defendants Michael Martin, James Armstrong, Isa A. Basir, James Burrus, Sandra Monahan and Suzanne Wayda-Slomski's motion for summary judgment. (Doc. No. 16). Plaintiff filed a response in opposition to the motion for summary judgment. (Doc. No. 18). For the reasons discussed below, this court recommends that Defendants' motion be **GRANTED** and that summary judgment be entered in their favor.

1

**I. Background**

On February 22, 2008, Plaintiff began his sentence for armed robbery at the Egeler Reception and Guidance Center. (Defs.' Mot. # 16 Ex. A, CMIS Transit List). Plaintiff, a recent convert to Judiasm, alleges that on March 28, 2008, Chaplin Isa A. Basir administered the Kosher diet test to him, and Plaintiff claims that he answered all of the questions correctly. (Compl. p. 3-4). Chaplin Bashir does not recall administering the Kosher diet test to Plaintiff, nor is there any MDOC record showing that Chaplin Basir conducted a Kosher diet interview with Plaintiff. (Defs.' Mot. # 16 Ex. C, Basir Aff. ¶ 4; Defs.' Mot. # 16 Ex. D., Martin Aff. ¶ 3). Plaintiff was subsequently transferred to Gus Harrison Correctional Facility, a non-Kosher facility. (Compl. p. 3; CMIS Transit List).

While Plaintiff was at Gus Harrison Correctional Facility, on April 12, 2008, Chaplin James Burrus administered the Kosher diet test to Plaintiff. (Compl. p. 3). Plaintiff complains that the Kosher diet test administered by Chaplin Burrus was "too advanced for [him]." (Compl. p. 3).

On May 1, 2008, Chaplin Michael Martin, the Special Activities Coordinator for the prison system, denied Plaintiff's request for participation in the Kosher diet program. (Martin Aff. ¶ 5). In a letter to the prison warden denying Plaintiff's request, Chaplin Martin noted that Plaintiff "provided brief, incomplete and sometimes inaccurate explanations to the question asked" during his interview with Chaplin Burrus. (Defs.' Mot. # 16 Ex. D, MDOC Prisoner Religious Meal Determination). Further, Chaplin Martin wrote that Plaintiff "was unable to explain the major teachings of Judaism, or what a kosher diet does and does not consist of. His responses do not show the breadth of understanding of his newfound religion that would suggest a sincerity to follow its beliefs and practices." (Ex. D, MDOC Prisoner Religious Meal Determination). Also, Chaplin

Burrus reported that he saw Plaintiff use a "cheat sheet" during the written portion of the interview. (Defs.' Mot. # 16 Ex. F, Burrus Aff. ¶ 4).

After Plaintiff was denied participation in the Kosher meal program, Plaintiff claims he requested religious materials and his request was denied by Chaplin Burrus and James Armstrong, the Manager of the Grievance and Appeals Section of the Michigan Department of Corrections. (Compl. p. 4). Plaintiff further alleges Chaplin Burrus and Armstrong did not allow him to participate in religious services. (Compl. p. 4). Chaplin Burrus avers that no Jewish religious materials were available at the time Plaintiff requested them. (Burrus Aff. ¶ 6). Chaplin Burrus further avers that Plaintiff was not allowed to attend religious services because Jewish group services were not available at the prison at that time, due to the fact that there were fewer than five Jewish prisoners within the same security level as Plaintiff. (Burrus Aff. ¶ 6). Armstrong states that he was not involved in the decision to deny Plaintiff religious materials; his only role was to review and respond to Plaintiff's step III grievance. (Armstrong Aff. ¶ 5).

Following Defendants' refusal to provide religious materials, Plaintiff embarked on a hunger strike, which lasted until Plaintiff became ill. (Compl. p. 4).

On July 22, 2008, Plaintiff requested religious study materials from his property, while he was in segregation. (Compl. p. 4). Plaintiff claims that Assistant Resident Unit Supervisor (ARUS) Sandra Monahan refused to provide the religious study materials to him and Armstrong supported her decision. (Compl. p. 4). ARUS Monahan issued Plaintiff's legal materials, papers, a Bible, and magazines to him on June 5, 2008. (Defs.' Mot. #16 Ex. G, Monahan Aff. ¶¶ 3-4). ARUS Monahan denies receiving a July 22, 2008 request from Plaintiff for additional materials. (Monahan Aff. ¶ 5). Armstrong averred that his only involvement was to respond to Plaintiff's step III grievance

3

related to this incident. (Armstrong Aff. ¶ 6).

On August 1, 2008, Plaintiff requested notary services and alleges that ARUS Monahan, Suzanne Wayda-Slomski and Armstrong denied him access to the notary. (Compl. p. 4). ARUS Monahan avers that she was absent from work on August 1, 2008 and, therefore, could not have denied Plaintiff access to a notary. (Monahan Aff. ¶ 6). Wayda-Slomski does not recall Plaintiff asking her to notarize any document; rather, she remembers Plaintiff asking her to pass a document to another prisoner, which she refused to do. (Defs.' Mot. # 16 Ex. H, Wayda-Slomski Aff. ¶¶ 3-4). Armstrong avers that he was not involved in the decision to refuse Plaintiff notary services; his only involvement was to respond to Plaintiff's step III grievance. (Armstrong Aff. ¶ 7).

Plaintiff filed grievances related to all of the incidents discussed above, and exhausted his administrative options. (Compl. attached grievances and decisions).

On December 10, 2008, Plaintiff filed suit in this court. In his complaint, Plaintiff alleges that Defendants denied him his rights protected by the First and Fourteenth Amendments and violated the Religious Freedom Restoration Act (RFRA). Plaintiff seeks an injunction barring discrimination, mandating his immediate placement in the Kosher meal program and forwarding any monetary award he recovers to his personal bank account. Plaintiff seeks compensatory damages in the amount of $50,000 and punitive damages.

## II. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather

determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

### III. Analysis

#### A. First and Fourteenth Amendment Claims

Defendants first argue that Defendants Armstrong, Basir and Martin are entitled to summary judgment because they were not personally involved in the activity that forms the basis of the complaint. To prevail on § 1983 claim, a plaintiff must show personal involvement by the defendant in the constitutional violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). A defendant is not liable under § 1983 when his or her only action was to deny an administrative grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).

Plaintiff accuses Armstrong of denying him a copy of the Kosher diet test, not allowing him to participate in Jewish services, and refusing him notary services. (Compl. p. 3-4). Armstrong is the Manager of the Grievance and Appeals Section for the Michigan Department of Corrections. As such, his only involvement was to review and respond to Plaintiff's grievance appeals; Armstrong denied all of Plaintiff's grievance appeals. Armstrong's denial of Plaintiff's grievance appeals does not give rise to liability under § 1983. *Shehee, supra.* Accordingly, Armstrong is entitled to summary judgment.

Chaplin Basir and Chaplin Martin are also entitled to summary judgment, for lack of personal involvement, on Plaintiff's claim that they participated in Plaintiff's transfer to a non-

5

Kosher facility. Although Chaplins Basir and Martin may have been involved in administering the Kosher diet test and denying Plaintiff participation in the Kosher diet program, thereby allowing Plaintiff to be housed in a non-Kosher facility, they were not personally involved in the decision to transfer Plaintiff to a non-Kosher facility. Basir and Martin, therefore, are not liable under § 1983 for Plaintiff's transfer to a non-Kosher facility. *See Copeland, supra*.

Defendants next argue that Plaintiff's First Amendment Free Exercise Clause claim and his claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) fail as a matter of law.[1] This Court will address the claims against each Defendant in term.

Plaintiff alleges that Chaplin Martin deprived him of his right to free exercise of religion by denying his request to participate in the Kosher Meals Program. Defendants argue that Chaplin Martin properly denied Plaintiff participation in the Kosher Meal Program because Plaintiff "failed to demonstrate that the dietary request was based on a sincerity to follow the beliefs and practices of Judaism." (Defs.' Mot. 8).

To establish that his right to free exercise of religion has been violated, Plaintiff must show that: 1) the belief or practice he seeks to protect is religious within his own "scheme of things;" 2) that his belief is sincerely held; and 3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir.1987). When a prison official inquires into the sincerity of an inmate's religious beliefs, the official should not attempt to evaluate the truth or validity of the beliefs. *United States v. Seeger*, 380 U.S. 163, 184-85 (1965). Rather, the inquiry should focus on whether the beliefs are "truly held" and whether they are "religious in nature."

---

[1] Plaintiff does not assert a claim under RLUIPA in his complaint. Accordingly, this Court will not consider any argument related to RLUIPA in its analysis.

*Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir.1991) (quoting *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir.1987)). Only if the prisoner makes this threshold showing of a sincerely held religious belief will the court consider "whether the challenged practice of the prison officials infringes on the religious belief"; and "whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent*, 821 F.2d at 1224-25.

It is undisputed that Plaintiff's recorded religion is Judaism. What is in dispute, however, is the sincerity of his beliefs. Chaplin Martin concluded that Plaintiff was not a sincere believer because: 1) during his interview, Plaintiff "provided brief, incomplete and sometimes inaccurate explanations to the questions asked"; 2) Plaintiff "was unable to explain the major teachings of Judaism"; and 3) Plaintiff was unable to explain the what is included and excluded from a Kosher diet. (Defs.' Mot. # 16, Ex. D., MDOC Prisoner Religious Meal Determination). Given Plaintiff's inability to answer basic questions about Judaism, as evidenced by his answers in the interview and on the written exam, Plaintiff has not shown that his belief is sincerely held. In addition, Defendants have offered evidence that Plaintiff cheated on the written exam. This also indicates that Plaintiff's beliefs are not truly held. There is little extrinsic evidence demonstrating the sincerity of Plaintiff's belief other than his recent decision to identify himself as Jewish. Because Plaintiff has not shown that his beliefs are sincerely held, summary judgment should be entered on behalf of Chaplin Martin on Plaintiff's claim that Martin unconstitutionally denied him participation in the Kosher Meals Program.

Next, Defendants argue that Chaplin Burris are entitled to summary judgment on Plaintiff's claim that he did not permit him to attend Jewish services and refused to furnish religious materials

7

to him.[2] As discussed above, in order to prevail on a free exercise claim, Plaintiff must show that his beliefs are sincerely held. Plaintiff has not presented evidence sufficient to show that his beliefs are sincere; particularly in light of the evidence presented by Defendants, which indicates that Plaintiff is a new convert, studying for one month, who lacks understanding of his new religion.

Assuming, however, that Plaintiff showed that his beliefs were sincere, Plaintiff cannot overcome his burden of showing that the policy of refusing to have group religious services for fewer than five inmates in the same security level at a facility is not reasonably related to a penological interest. *See Turner v. Safley*, 482 U.S. 78, 84 (1987). A regulation is valid if it is "reasonably related to legitimate penological interests." *Id.* In making this determination, a court must balance the following four factors:

> 1. whether a valid, rational connection between the prison regulation and the legitimate governmental interest exists;
> 2. whether there are alternative ways for the prisoner to exercise the implicated constitutional right;
> 3. what impact would accommodation of the implicated constitutional right have on the prison administration; and
> 4. whether the regulation is an exaggerated response to prison concerns.

*Id.*

Defendants aver that due to space and staffing limitations, group worship services are not provided if there are fewer than five inmates of a certain religion in the same security level. (Defs.' Mot. 9; Burrus Aff. ¶ 6). Plaintiff has not contradicted Defendants' statement that space and staffing limitations inhibit the government's ability to provide group religious services to all inmates. Thus, this court accepts that there is a valid, rational connection between the prison regulation and the

---

[2]Plaintiff makes the same accusations against Armstrong. However, as discussed earlier, Plaintiff has not shown that Armstrong was personally involved in the decision to deny Plaintiff access to group religious services and religious materials.

government's interest in apportioning space and staff in the prison. In addition, there is no evidence that Defendants precluded Plaintiff from practicing his religion in his cell or denied him visits from clergy. Plaintiff, therefore, had alternative methods of exercising his religion. Further, there is no evidence contradicting Defendants averment that holding group religious services for fewer than five inmates is burdensome and it is not apparent that the prison policy is an exaggerated response to prison concerns. Accordingly, the court finds that the prison policy is reasonably related to legitimate penological interests.

Also, Chaplin Burrus is entitled to summary judgment on Plaintiff's claim that he did not provide him with religious materials. MDOC is not obligated, under the Constitution, to furnish religious materials to prisoners. Plaintiff has the right to purchase religious materials, and there is no evidence that Defendants restricted Plaintiff from purchasing religious materials. *See Cooper v. Pate*, 378 U.S. 546 (right to purchase religious materials). Summary judgment should be entered in favor of Chaplin Burrus.

Lastly, Defendants argue that summary judgment should be entered in favor of ARUS Monahan and ARF Librarian Wayda-Slomski.

Plaintiff accuses Monahan of denying him access to his religious property on July 22, 2008. Monahan avers that she provided Plaintiff with his legal materials and papers, a Bible, and magazines on June 5, 2008, and she does not recall a July 22, 2008 request for additional items. (Monahan Aff. ¶¶ 4-5). Plaintiff attached to his response a kite dated July 2, 2008 that is addressed to ARUS Monahan, in which Plaintiff requests additional religious papers in his property. At the bottom of the kit, there is a note, presumably from a prison official, that says, "You have all ready received allowable property – there is a one time entry to property unless additional legal concerns

9

arise."

Even if ARUS Monahan denied Plaintiff access to the religious papers he requested, Plaintiff has not alleged or shown how her denial inhibited his ability to exercise his religion. ARUS Monahan previously furnished Plaintiff with a Bible and, as discussed above, Plaintiff was allowed to worship in this cell, have clergy visits and order religious materials, in accordance with MDOC policy. It is unclear, therefore, how ARUS Monahan's alleged denial to furnish religious materials infringed on Plaintiff's exercise of his religion. Thus, summary judgment should be entered on behalf of ARUS Monahan on Plaintiff's claim that she denied him access to religious materials in his property.

Plaintiff also accuses ARUS Monahan and ARF Librarian Wayda-Slomski of denying him notary services for witness affidavits. Assuming, *arguendo*, that these Defendants denied Plaintiff notary services, such a denial does not constitute a violation of Plaintiff's constitutional right to exercise his religion– the only constitutional right Plaintiff alleges Defendants violated. Accordingly, summary judgment should be entered in favor of Defendants ARUS Monahan and ARF Library Wayda-Slomski on Plaintiff's claim that they denied him notary services.

The court also notes that Defendants are entitled to summary judgment based on qualified and/or sovereign immunity. Plaintiff has not pleaded facts sufficient to state a Constitutional violation; therefore, the Defendants sued in their individual capacities are entitled to summary judgment on the additional ground of qualified immunity. Additionally, the Defendants sued in their official capacities are entitled to summary judgment based on sovereign immunity because the state has not consented to suit.

### B. Religious Freedom Restoration Act Claim

Defendants argue that Plaintiff's Religious Freedom Restoration Act Claim fails as a matter of law because the statute is unconstitutional. In 1997, the United States Supreme Court held that RFRA was unconstitutional as applied to the states. *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997). Defendants are entitled to summary judgment on Plaintiff's RFRA claim.

### C. Claims Against Jane and John Doe

Plaintiff concedes that his claims against the transfer coordinator, identified in the complaint as Jane Doe or John Doe, are not viable. (Pl.'s Resp. 2). Accordingly, Jane and John Doe should be dismissed from this case.

## IV. Conclusion

For the reasons discussed above, the court recommends that Defendants' motion be **GRANTED** and that summary judgment in favor of Defendants be entered on all of plaintiff's claims. (Doc. No. 16). Summary judgment in favor of Defendants also moots the two other motions Plaintiff currently has pending. (Doc. Nos. 19 and 20). Accordingly, those motions should be **DENIED** as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v.*

*Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


                        S/Virginia M. Morgan
                        Virginia M. Morgan
                        United States Magistrate Judge


Dated: November 5, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 5, 2009.

                        s/Jane Johnson
                        Case Manager to
                        Magistrate Judge Virginia M. Morgan