UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DERRICK ALLISON,

                Plaintiff,                      Case Number 08-15093-BC
                                             Honorable Thomas L. Ludington

v.

MIKE MARTIN,

                Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY, CANCELLING HEARING, DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL, AND DENYING PLAINTIFF'S REMAINING MOTIONS AS MOOT**

On February 22, 2008, Plaintiff began his sentence for armed robbery at the Egeler Reception and Guidance Center. Plaintiff, a recent convert to Judiasm, alleges that on March 28, 2008, Chaplain Isa A. Basir administered the Kosher diet test to him, and Plaintiff claims that he answered all of the questions correctly. Chaplain Bashir does not recall administering the Kosher diet test to Plaintiff, nor is there any MDOC record showing that Chaplain Basir conducted a Kosher diet interview with Plaintiff. Plaintiff was subsequently transferred to Gus Harrison Correctional Facility, a non-Kosher facility.

While Plaintiff was at Gus Harrison Correctional Facility, on April 12, 2008, Chaplain James Burrus administered the Kosher diet test to Plaintiff. Plaintiff complains that the Kosher diet test administered by Chaplain Burrus was "too advanced for [him]." Compl. par. 3.

On May 1, 2008, Chaplain Michael Martin, the Special Activities Coordinator for the prison system, denied Plaintiff's request for participation in the Kosher diet program. In a letter to the prison warden denying Plaintiff's request, Chaplain Martin noted that Plaintiff "provided brief,

incomplete and sometimes inaccurate explanations to the question asked" during his interview with Chaplain Burrus.  ECF No. 64 Ex. 1 at 19. Further, Chaplain Martin wrote that Plaintiff "was unable to explain the major teachings of Judaism, or what a kosher diet does and does not consist of. His responses do not show the breadth of understanding of his newfound religion that would suggest a sincerity to follow its beliefs and practices." *Id.* Also, Chaplain Burrus reported that he saw Plaintiff use a "cheat sheet" during the written portion of the interview.

After Plaintiff was denied participation in the Kosher meal program, Plaintiff claims he requested religious materials and his request was denied by Chaplain Burrus and James Armstrong, the Manager of the Grievance and Appeals Section of the Michigan Department of Corrections. Plaintiff further alleges Chaplain Burrus and Armstrong did not allow him to participate in religious services.  According to Chaplain Burrus, no Jewish religious materials were available at the time Plaintiff requested them. Plaintiff was not allowed to attend religious services because Jewish group services were not available at the prison due to the fact that there were fewer than five Jewish prisoners within the same security level as Plaintiff. Armstrong states that he was not involved in the decision to deny Plaintiff religious materials; his only role was to review and respond to Plaintiff's step III grievance. Following Defendants' refusal to provide religious materials, Plaintiff embarked on a hunger strike, which lasted until Plaintiff became ill.

On July 22, 2008, Plaintiff requested religious study materials from his property, while he was in segregation. Plaintiff claims that Assistant Resident Unit Supervisor (ARUS) Sandra Monahan refused to provide the religious study materials to him and Armstrong supported her decision. ARUS Monahan issued Plaintiff's legal materials, papers, a Bible, and magazines to him on June 5, 2008. ARUS Monahan denies receiving a July 22, 2008 request from Plaintiff for

additional materials. Armstrong's only involvement was to respond to Plaintiff's step III grievance related to this incident.

On August 1, 2008, Plaintiff requested notary services and alleges that ARUS Monahan, Suzanne Wayda-Slomski and Armstrong denied him access to the notary. ARUS Monahan avers that she was absent from work on August 1, 2008 and, therefore, could not have denied Plaintiff access to a notary. Wayda-Slomski does not recall Plaintiff asking her to notarize any document; rather, she remembers Plaintiff asking her to pass a document to another prisoner, which she refused to do. Armstrong avers that he was not involved in the decision to refuse Plaintiff notary services; his only involvement was to respond to Plaintiff's step III grievance. Plaintiff filed grievances related to all of the incidents discussed above, and exhausted his administrative options.

On December 10, 2008, Plaintiff filed suit in this court. In his complaint, Plaintiff alleges that Defendants prevented him from practicing his religion in violation of the Free Exercise Clause of the United States Constitution pursuant to 42 U.S.C. § 1983 and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, by denying him participation in the Kosher Meals Program and refusing to give him religious materials. Plaintiff seeks an injunction barring discrimination, mandating his immediate placement in the Kosher meal program and forwarding any monetary award he recovers to his personal bank account. Plaintiff seeks compensatory damages in the amount of $50,000 and punitive damages.

On March 16, 2009, Defendants Martin, Armstrong, Bashir, Burrus, Monahan, and Slomski filed a motion for summary judgment (ECF No. 16) and Plaintiff filed a response on April 20, 2009 (ECF No. 18). United States Magistrate Judge Virginia Morgan issued a report and recommendation to grant Defendants' motion for summary judgment (ECF No. 21) on November 5, 2009, and

Plaintiff filed an objection to the report and recommendation (ECF No. 22) on November 19. On January 22, 2010, this Court issued an order adopting Judge Morgan's report and recommendation. ECF No. 23.  The Court's order overruled Plaintiff's objections, granted Defendants' motion for summary judgment as to all claims, and dismissed Plaintiff's complaint with prejudice. On February 18, 2010, Allison filed a notice of appeal (ECF No. 25) of the Court's January 22, 2010 order. Defendants filed an appearance but did not provide a response on appeal.  Counsel for Defendants instead noted that they believed the issues were without merit, and that "[d]ue to scarce resources and current budget restraints, as well as the increasing workload, [the Michigan Attorney General's office did] not intend to file a brief unless requested to do so." *See Allison v. Martin, et al.*, No. 006110653547 10-1218 (6th Cir. June 14, 2010).

The United States Court of Appeals for the Sixth Circuit entered a decision on December 30, 2010, finding that Allison has explicitly abandoned his claims against defendants John Doe, Basir, and Slomski and that Allison had also waived his claim that Monahan and Wayda-Slomski denied him notary services. ECF No. 34. The Court of Appeals then affirmed this Court's judgment as to all claims raised in Allison's complaint except his First Amendment claim that Chaplain Martin denied his request to participate in the Kosher Meals Program.  The Court of Appeals concluded that a genuine dispute of fact had been demonstrated concerning "the sincerity of Allison's religious beliefs regarding the need for a Kosher diet" because Allison "attested that he passed the Kosher diet test per MDOC policy and denied that he cheated on any examination."[1] ECF No. 34 at 4. The Court

---

[1]In denying Allison 's request for the Kosher Meals Program, Defendants concluded that Allison  lacked sincerity in his religious beliefs regarding the need for a Kosher diet because he provided incomplete and sometimes inaccurate explanations to the questions asked, he was unable to explain the major teachings of Judaism, and he was unable to explain what is included and excluded from a Kosher diet.

-4-

of Appeals also vacated this Court's conclusion that the defendants were entitled to qualified immunity in order to provide an opportunity to address the qualified immunity issue in greater detail. On January 21, 2011, the Court received a mandate from the Court of Appeals (ECF No. 36) pursuant to the disposition entered on December 30, 2010.

Now before the Court is Defendant Martin's motion for summary judgment on the basis of qualified immunity. ECF No. 62. Plaintiff filed a response, contending that Martin is not entitled to qualified immunity because Plaintiff's claim is not for denial of Kosher meals but for falsifying Plaintiff's records in order to disqualify him from the Kosher meal program. ECF No. 64. Plaintiff previously filed a motion to amend his complaint to include a claim against Martin for falsifying his records, but the Court denied this request. ECF No. 47. At this juncture, Plaintiff's only remaining claim is his claim concerning whether his First Amendment right was violated when Martin denied his request to participate in the Kosher Meals Program.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, the motion will be decided on the papers submitted. E.D. Mich. LR 7.1(f)(2). For the reasons provided herein, the Court will Defendant's motion for summary judgment on the basis of qualified immunity.

## I.    Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment.  *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## II.   Discussion

### A.   Qualified Immunity

To prevail on his § 1983 claim, Plaintiff must show that Martin deprived him of his First Amendment right to practice his religion. *See Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008)

("In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish that a person acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States."). As a state employee, however, Martin is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See id.* (citation omitted).

The doctrine of qualified immunity, "shields 'governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Government officials are immune from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts should first determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* at 201. If the plaintiff establishes that a constitutional violation occurred, a court must next consider "whether the right was clearly established." *Id.* In order for a right allegedly violated to be considered clearly defined, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* The Court is "free to consider [the two-part test] in whatever order is appropriate in light of the issues before us," and therefore need not decide whether there was a constitutional violation if it is determined that an official in Martin's position would reasonably believe that his actions were not

-7-

in contravention of Plaintiff's constitutional rights. *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

In inquiring whether a constitutional right is clearly established, a court " 'must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits.' " *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006) (citing *Champion v. Outlook Nashville, Inc*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)), *cert denied sub nom*, *Dickhaus v. Champion*, 544 U.S. 975 (2005)). Those decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996) (citation and quotation omitted).

When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Saucier*, 533 U.S. at 201. The Sixth Circuit has occasionally added a third inquiry: "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.' " *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) (quoting *Feathers v. Aey*, 310 F.3d 843, 848 (6th Cir. 2003) (internal citation omitted)); *see also Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996) (applying qualified immunity analysis to the question of whether doctors' actions violated the Eighth Amendment). The Sixth Circuit has noted that this third inquiry may, in some cases, increase the clarity of the court's analysis. *Armstrong*, 432 F.3d at 699. Qualified immunity analysis "must be undertaken in light of

the specific context of the case, not as a broad general proposition [.]" *Saucier*, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Saucier*, 533 U.S. at 201-02).

To find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Id.* at 607.

Furthermore, the right cannot be stated in too general of terms. The "right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Saucier*, 533 U.S. at 202. When determining the objective legal reasonableness portion of the qualified immunity standard, individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendants' position would understand that what he did violated those rights. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (citation and quotation omitted).

-9-

**B**

Prisoners do not lose the right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Generally speaking, a Jewish prisoner is entitled to have kosher meals if his or her sincere beliefs so require. *See Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999); *DeHart v. Horn*, 227 F.3d 47, 52 n.3 (3d Cir. 2000) ("Prison officials are, of course, entitled to both make a judgment about the sincerity and religious nature of an inmate's belief when he or she asks for different treatment and to act in accordance with that judgment."). But the circumstances of incarceration may require some restrictions on a prisoner's exercise of his religious beliefs. "The free exercise clause of the First Amendment embraces two concepts: the freedom to believe and the freedom to act. 'The first is absolute but, in the nature of things, the second cannot be.' " *Combs v. Corrections Corp. of America*, 977 F. Supp. 779, 803 (W.D. La. 1997) (quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944)). Thus, the court must balance the prisoner's constitutionally protected right to freely exercise his religion against the state's legitimate interest in operating its prison. *Brown v. Johnson*, 743 F.2d 408, 411 (6th Cir. 1984), *cert. denied*, 469 U.S. 1215 (1985). As long as prison authorities present evidence that the challenged regulation is reasonably related to legitimate penological interests, the court is not permitted to substitute its judgment for theirs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Brown*, 743 F.2d at 412-13.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining the reasonableness of a challenged policy, there are four factors to be considered: (1) whether there is a valid rational connection between the regulation and the legitimate

-10-

governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Turner*, 482 U.S. at 88-91; *O'Lone*, 482 U.S. at 349 (1987). The final factor "is not a 'least restrictive alternative' test." *Turner*, 482 U.S. at 90.

At the time of the events in the instant case, there was no clearly established law from the Sixth Circuit or the United States Supreme Court holding unconstitutional the Michigan Department of Corrections' policy of questioning prospective Kosher diet participants about their religion in order to test the prisoner's sincerity to abide by Kosher law. Defendant notes, however, that MDOC's Kosher test policy has been upheld on numerous occasions.  In *Butts v. Riley*, 2010 U.S. Dist. LEXIS 17517 (W.D. Mich. 2010), the court concluded that the defendants' determination of lack of sincerity should not be disturbed by the courts and that there are compelling economic interests necessitating the test.  *Id.* at *16-17; *see also Fuller v. Burnett*, 2007 U.S. Dist. LEXIS 99557, at *14-15 (W.D. Mich. 2007) (holding that "a lack of the basic knowledge regarding why specific food must be consumed for a religion is a strong indication of a lack of sincerity."). Similarly, in *Blumenthal v. Armstrong*, the court upheld a denial of kosher meals and the use of the kosher test. 2010 U.S. Dist. LEXIS 30174 (W.D. Mich. 2010).  "The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court." *Id.* at *14-15. Defendant concedes that *Blumenthal* involved facts not present here because the plaintiff was caught purchasing non-kosher food, but the court also

-11-

considered that the plaintiff did not wear a yarmulke. *Id.* at *2, *14. As an illustration, however, Defendant notes that in the instant case Plaintiff did not know what a yarmulke was at the time of his Kosher test.  ECF No. 16 Ex. 8 at 6.

Defendant asserts that the Michigan Department of Corrections' policy is to restrict the Kosher diet program to prisoners whose sincerity is evidenced by their basic knowledge of the religion and the requirements of keeping kosher. A prisoner who does know the requirements to keep kosher obviously cannot do so, and Defendant contends that a lack of such knowledge is a strong indication of insincerity. Additionally, requiring that only sincere inmates participate serves compelling prison interests.  Defendant testified that allowing insincere prisoners to participate offends sincere practitioners. This would engender strife in the prison, which undermines prison security. Allowing insincere prisoners to manipulate their prison placement through Kosher meal requests also undermines prison security as evidenced by the fact that, in the past, some prisoners have found ways to manipulate transfers to a specific prison for purposes of escape. *See* Brian Mockenhaupt, *The Escape from Kinross Prison*,  http://www.esquire.com/features/kinross-prison-0808 (last visited December 8, 2011). There are limited resources that allow only limited provision of kosher meals, and allowing insincere prisoners to participate would result in less space available for the sincere prisoners. In addition, the cost of providing kosher meals is two to three times the cost of providing regular meals. Defendant has set forth sufficient reasons to demonstrate that the regulation of the Kosher menu accommodation as set forth in MDOC Policy Directive 05.03.150 and Operating Procedure 05.03.150A is reasonably related to legitimate penological interests. Moreover, Plaintiff states in his response that he does not challenge the constitutionality of the MDOC policy.  ECF No. 64.

Defendant thus argues that the policy of restricting Kosher diets to sincere inmates is reasonably related to the compelling state interests of prison security and budget. The state prison system must be free to maintain order and security and to control institutional costs. At the time of the events alleged in this suit, there was no caselaw holding unconstitutional the Michigan Department of Corrections' policy of testing inmates for sincerity before making accommodations but there were several cases upholding the use of the test. As a result, Defendant contends he is entitled to qualified immunity and the burden shifts to Plaintiff to provide some clearly established authority under which the Defendant would know his actions were unconstitutional.

Plaintiff's response provides extensive discussion regarding Martin's alleged falsification of statements in unspecified exhibits and acts committed by former defendant Burrus. The only clarification Plaintiff offers for these allegations is that Martin falsified documents by "accusing" Plaintiff of being insincere and lacking sufficient knowledge. ECF No. 64 at 30. Plaintiff does not otherwise explain how Martin falsified any documents or statements. Plaintiff also challenges his denial of Kosher meals because he contends Martin relied only on the three interview questions and not on the written test Plaintiff believes he passed. Although this is not a claim properly before the Court, Plaintiff's general statements regarding falsification of unspecified statements is insufficient evidence to demonstrate a genuine issue of material fact on the issue of whether Defendant Martin falsified the results of Plaintiff's interview responses or written test answers. Nothing in the record supports the suggestion of intentional deception on Martin's part, and nothing in RLUIPA or the First Amendment requires a verbatim transcription of a prisoner's oral responses to questions and Plaintiff's written answers do not appear to be altered. The decision of the prison officials as to whether the prisoner has demonstrated an appropriate religious basis for a Kosher diet is a judgment

-13-

call, and one that, in this instance, does not warrant being disturbed.

Plaintiff also contends that Defendant has not proven him insincere; this, however, is also not the issue before the Court. Plaintiff's sincerity, as discussed by the Sixth Circuit's December 30, 2010 opinion, presents an issue of fact for a jury and is unrelated to the instant qualified immunity analysis. Plaintiff notes that he sent a letter that Martin allegedly did not consider with regard to Plaintiff's sincerity, but the MDOC Operating Procedure requires Martin to review only the information provided in the report from the interview. Operating Procedure 05.03.150A ¶ M. Plaintiff also argues that Martin, by virtue of his position with the MDOC, is required to know the law and thus knowingly violated Plaintiff's clearly established constitutional right. Plaintiff offers no legal authority for this contention. The remainder of Plaintiff's response is vague allegations of falsified documents, fabricated affidavits, evidence with regard to his sincerity, and his believe that the standard for denial of a Kosher diet should be absolute lack of knowledge or being proven insincere.

Martin noted in his letter to the prison warden that Plaintiff "provided brief, incomplete and sometimes inaccurate explanations to the question asked" during his interview with Chaplain Burrus. ECF No. # 16 Ex. D. Further, Martin wrote that Plaintiff "was unable to explain the major teachings of Judaism, or what a kosher diet does and does not consist of. His responses do not show the breadth of understanding of his newfound religion that would suggest a sincerity to follow its beliefs and practices." *Id.* Martin ultimately denied Plaintiff's request because of his general lack of understanding of Judaism and of Kosher diet requirements. In making this determination, Martin did not violate any clearly established constitutional right and is thus entitled to qualified immunity as to Plaintiff's First Amendment claim. Martin's denial was based on the applicable Policy Directive

-14-

and Operating Procedure 05.03.150A ¶ L because Plaintiff could not: (1) explain the major teachings of his designated religion (Judaism); or (2) explain what kosher does or does not consist of. Moreover, there does not appear to be any authority that suggests that the First Amendment imposes liability on prison officials for conscientiously applying reasonable policies designed to implement legitimate prison management interests or that absolute lack of knowledge is the standard for denial of a religious meal program with the MDOC.

## C

Plaintiff has also filed a motion for appointment of counsel. ECF No. 59. "Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 605-06 (citations and internal quotation marks omitted). "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.' " *Id.* (citing *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)). "This generally involves a determination of the 'complexity of the factual and legal issues involved.' " *Id.* (citing *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)). Counsel should not be appointed pursuant to 28 U.S.C. § 1915(d) where a pro se litigant's claims are frivolous, *Henry*, 739 F.2d at 1119, or when the chances of success are extremely slim, *Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983).

After careful consideration of Plaintiff's motion, including the type and nature of the case, its complexity, and Plaintiff's ability to prosecute his claim, it is quite apparent that counsel is not necessary at this time to insure that Plaintiff's claims are fairly heard. Plaintiff's motion for appointment of counsel will thus be denied.

-15-

## III

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment on the basis of qualified immunity (ECF No. 62) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for appointment of counsel (ECF No. 59) is **DENIED**.

It is further **ORDERED** that Plaintiff's First Amendment claim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's remaining pending motions (ECF Nos. 54, 55, 56, 57, 58) are **DENIED AS MOOT**.

<div style="text-align:right">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: December 14, 2011

<div style="border:1px solid; padding:10px">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means and upon Derrick Allison, # 416330, at Marquette Branch Prison, 1960 U.S. Hwy 41 South, Marquette, MI 49855 by first class U.S. mail on December 14, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>